IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| RENATO TEIXERA | : | NO. 25-295 |


MEMORANDUM

Bartle, J.                                          October 27, 2025

Defendant Renato Teixera has been charged with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Before the court is his motion to suppress physical evidence, that is a firearm, on the ground that it was seized in violation of the Fourth and Fourteenth Amendments to the United States Constitution.[1]

The court held an evidentiary hearing on the motion. The Government presented the testimony of Philadelphia Police Officer John Lee. Teixera testified on his own behalf. Both parties presented exhibits, including police reports of the arrest, photographs of the site where Teixera was arrested, and footage from body-worn cameras of the two officers who arrested

---

[1] The Philadelphia police made the seizure. The Fourth Amendment is applicable to the states and is incorporated into the due process clause of the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643 (1961).

Teixera, including Officer Lee.  The court makes the following
findings of fact and conclusions of law.

I.

Around 9:05 p.m. on May 27, 2025, Officers John Lee
and August Gershwin[2] were on patrol in a high crime area near the
intersection of North Broad Street and Erie Avenue in
Philadelphia.  Both officers were in uniform but in an unmarked
vehicle with tinted windows.  Officer Lee sat in the front
passenger seat with his window down.

Officer Gershwin had been driving northbound on Broad
Street when he made a U-turn at its intersection with Germantown
Avenue.  As the officers continued southbound on Broad Street,
one of them saw Teixera, who was walking to their right,
southbound on the west sidewalk of Broad Street in front of a
fast-food restaurant.  Teixera was wearing a black sweatsuit and
a white and black hooded windbreaker and was holding his phone
in front of him with his right hand.  The officers also noticed
that Teixera was carrying a crossbody bag across the front of

---

2        At the time, both officers were members of the Violent
Crime Reduction Team ("VCRT").  Officer Lee testified that
members of VCRT are assigned by their captain to certain areas
of Philadelphia to reduce violence.  Officer Lee testified that
the work he did at VCRT was similar to his prior work with the
Five-Squad Tactical Unit, which he described as "proactive
policing" intended to "deter violence."

-2-

his chest.  While Officer Lee testified that it "appeared to be heavy," the court finds this statement not to be credible.

Officer Gershwin pulled the unmarked vehicle partially up on the sidewalk alongside Teixera.  Only its two left wheels remained on Broad Street.  Teixera was startled and appeared nervous when an unmarked vehicle suddenly turned up on the sidewalk.

Officer Lee yelled out to Teixera, at which point Teixera saw that Officer Lee was a uniformed police officer. Officer Lee asked Teixera whether he had anything in his crossbody bag.  Teixera answered, "No."  Officer Lee then asked him whether he had a gun in the bag.  Teixera, clutching his bag, did not answer.

Officer Gershwin then pulled the car even farther onto the sidewalk and nearly perpendicular to the flow of traffic. Officer Lee stepped out of the car at this point to speak with Teixera as Teixera moved to the back of the car.

Officer Lee ordered Teixera to put his hands up. Teixera briefly did so, and Officer Lee again asked him whether he had a gun in his bag.  Without answering, Teixera fled north on the Broad Street sidewalk and turned west onto Erie Avenue, with Officer Lee in pursuit.  Officer Gershwin followed.  Both officers activated their body cameras while running after Teixera.

-3-

As Teixera ran, his windbreaker flapped around his body, and the crossbody bag appeared to wrap around his left arm or hand rather than his chest.  Both the windbreaker and crossbody bag remained on Teixera while he was running.  The court finds not credible the testimony of Officer Lee that Teixera was attempting to discard his bag during the pursuit.

While chasing Teixera, Officer Lee pulled on the hood of Teixera's windbreaker and tugged the left sleeve of the windbreaker.  The windbreaker and crossbody bag were ultimately extricated from his person by Officer Lee.  Officer Lee then grabbed the back of Teixera's sweatshirt and threw Teixera to the ground in the middle of Erie Avenue.

Having caught up with Teixera, Officer Gershwin then pushed Teixera's head into the ground and attempted to handcuff him.  It was not until this point that Officer Lee felt the crossbody bag, which was wrapped in the windbreaker, and determined that it contained a gun.  He then placed both items on the ground slightly under his own body and near Teixera. Officer Lee removed the rest of the windbreaker from Teixera's right arm and took Teixera's phone from his hand.

A third officer approached and helped Officer Gershwin place Teixera in handcuffs and into the back of a marked police vehicle.  As additional officers arrived, Officer Lee unzipped

-4-

the crossbody bag and found a loaded, silver and black, 40 caliber handgun.

## II.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  Once a defendant has challenged the legality of a search or seizure, the government bears the burden of proving that any search or seizure was constitutional by a preponderance of the evidence.  United States v. Johnson, 63 F.3d 242, 245 (3d Cir. 1995); United States v. Matlock, 415 U.S. 164, 177 n.14 (1974). Evidence arising out of an unconstitutional search will be suppressed as the "fruit of the poisonous tree."  Wong Sun v. United States, 371 U.S. 471, 484-85 (1963); Nardone v. United States, 308 U.S. 338, 341 (1939).

Generally, a warrant based on probable cause is required for a seizure to be reasonable under the Fourth Amendment.  United States v. Robertson, 305 F.3d 164, 167 (3d Cir. 2002) (citing Katz v. United States, 389 U.S. 347, 356-57 (1967)).  Here, the officers arresting Teixera did not have a warrant.  However, under the "narrowly drawn authority" of Terry v. Ohio, 392 U.S. 1, 27 (1968), an officer without a warrant "may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable,

-5-

articulable suspicion that criminal activity is afoot."
<u>Illinois v. Wardlow</u>, 528 U.S. 119, 123 (2000).  "While
'reasonable suspicion' is a less demanding standard than
probable cause and requires a showing considerably less than
preponderance of the evidence, the Fourth Amendment requires at
least a minimal level of objective justification for making the
stop."  <u>Id.</u>

     The court must first decide when the seizure occurred.
<u>United States v. Smith</u>, 575 F.3d 308, 312 (3d Cir. 2009).  An
individual is seized when law enforcement officers either apply
physical force to restrain the individual's movement or the
individual submits to a show of authority.  <u>United States v.
Brown</u>, 448 F.3d 239, 245 (3d Cir. 2006) (quoting <u>California v.
Hodari D.</u>, 499 U.S. 621, 626 (1991)).  In determining whether
there has been a show of authority, the court must analyze
whether the officer's words and actions would have conveyed to a
reasonable person that he was being ordered to restrict his
movement and was not free to leave.  <u>United States v.
Mendenhall</u>, 446 U.S. 544, 554 (1980).  Factors indicative of a
show of authority include: "the threatening presence of several
officers, the display of a weapon by an officer, some physical
touching of the person of the citizen, or the use of language or
tone of voice indicating that compliance with the officer's
request might be compelled."  <u>Id.</u>  Mere momentary compliance

-6-

with a show of authority does not constitute submission.  United States v. Amos, 88 F.4th 446, 455 (3d Cir. 2023); United States v. Valentine, 232 F.3d 350, 359 (3d Cir. 2000); Smith, 575 F.3d at 316.

The court must then determine whether reasonable, particularized suspicion existed at the time of the seizure.  It does so by evaluating the "totality of the circumstances" leading up to the seizure, including the "officer's knowledge, experience, and common-sense judgments about human behavior." United States v. Graves, 877 F.3d 494, 498 (3d Cir. 2017); Robertson, 305 F.3d at 167.  The officers may draw inferences and make deductions from the information at hand which might elude an untrained person.  Robertson, 305 F.3d at 167 (citing United States v. Arvizu, 534 U.S. 266, 266 (2002)).  Among the "pertinent factor[s]" that officers may consider are whether a suspect exhibits "nervous, evasive behavior" and whether the location is a high-crime area.  United States v. Whitfield, 634 F.3d 741, 744 (3d Cir. 2010) (quoting Wardlow, 528 U.S. at 124). Presence in a high crime area, standing alone, however, does not justify a seizure.  Maryland v. Buie, 494 U.S. 325, 334 n.2 (1990).  On the other hand, "flight upon noticing police, plus some other indicia of wrongdoing, can constitute reasonable suspicion." United States v. Bonner, 363 F.3d 213, 217 (3d Cir. 2004).

The detaining officer must have a "particularized and objective basis" for suspecting legal wrongdoing. <u>Arvizu</u>, 534 U.S. at 266. "The ultimate question is whether a reasonable, trained officer standing in [the arresting officer's] shoes could articulate specific reasons justifying [the defendant's] detention." <u>Johnson v. Campbell</u>, 332 F.3d 199, 206 (3d Cir. 2003).

III.

Teixera posits that he was first seized when Officers Lee and Gershwin stopped their vehicle and began to question Teixera on the Broad Street sidewalk. Because he was not physically restrained by the officers during this initial interaction, a seizure could have occurred only if Teixera submitted to a show of authority. <u>Brown</u>, 448 F.3d at 245.

Officers Lee and Gershwin first approached Teixera by pulling an unmarked vehicle with tinted windows onto the sidewalk next to Teixera. Officer Gershwin pulled the vehicle farther onto the sidewalk and nearly perpendicular to the flow of traffic so that the vehicle partially blocked Teixera's path. Officer Lee yelled out to grab Teixera's attention and asked whether he had anything in his crossbody bag. After Teixera replied "No," Officer Lee specifically asked whether Teixera had a gun in his bag, and Teixera did not answer. Officer Lee then ordered Teixera to raise his hands. It is a show of authority

-8-

when an officer commands a person to stop and raise his or her
hands.  See Amos, 88 F.4th at 453.

A show of authority alone, as noted, does not
constitute a seizure.  An individual must submit to it.  Teixera
answered at least one of Officer Lee's questions and momentarily
held his hands up after being ordered to do so.  But less than
15 seconds after the officers pulled up next to him, Teixera
fled.  His temporary acquiescence did not constitute a
submission to authority.  See Amos 88 F.4th at 455; see also
Valentine, 232 F.3d at 359; Smith, 575 F.3d at 316.  Teixera was
not seized until the officers, after pursuit, subdued him on
Erie Avenue.

IV.

The validity of the seizure of the gun turns on
whether Officers Lee and Gershwin at the time of the seizure had
reasonable articulable suspicion that criminal activity was
afoot.  Terry, 392 U.S. at 30.

The officers did not have reasonable articulable
suspicion that criminal activity was afoot based on the conduct
or appearance of Teixera when they first saw him and then
questioned him.  He was simply walking south on Broad Street at
9:05 p.m. with a crossbody bag across his chest when he was
first observed by the police.  Contrary to Officer Lee's
testimony, the crossbody bag did not appear to be heavy.  A

crossbody bag is a common accessory, not unlike a handbag,
briefcase, or backpack and is commonly used for legitimate
purposes.  It was not reasonable without more to suspect that it
contained a firearm.  When the police approached Teixera, they
had no tip that he was engaged in criminal activity and no other
information that criminal activity was occurring or about to
occur at that location.  It is true defendant was startled or
nervous when the police suddenly drove their unmarked vehicle
onto the sidewalk, but anyone in any neighborhood would have
reacted the same way under the circumstances.  It could not be
reasonably understood as denoting criminal activity.  While
officers always have the right to ask questions, an individual
has every right not to provide information.  Florida v. Royer,
460 U.S. 491, 497-98 (1983).  This, likewise, is not an indicium
of wrongdoing.  Finally, Officer Lee did not provide any
reasonable and credible basis to order Teixera to raise his
hands.

        The court, of course, must consider as part of the
totality of the circumstances the fact that Teixera was in a
high crime area and that he fled.  The court must decide whether
walking alone at 9:05 in the evening on a major city street in a
high crime area with no specific indicia or information of
criminal or anticipated criminal activity known to the police at
the time gives rise to reasonable, particularized suspicion if

the individual is startled by the police's sudden driving onto
the sidewalk, refuses to give information, and then flees
without attempting to discard anything on his person.

The Government relies on Illinois v. Wardlow, 528 U.S.
119 (2000), to argue that "[u]nprovoked 'headlong flight' from
the police in a high-crime area" presents a sufficient basis for
reasonable suspicion.  Gov't's Resp. in Opp'n to Def.'s Mot. to
Suppress Physical Evid. at 16.  In Wardlow, the officers
converged "on an area known for heavy narcotics trafficking, and
the officers anticipated encountering a large number of people
in the area, including drug customers and individuals serving as
lookouts."  528 U.S. at 124.  Defendant was holding an "opaque
bag."  Id. at 121-22.  He immediately fled upon seeing the
officers.  Id. at 122.  They pursued him, patted him down, and
recovered a gun.  Id.  The Court cautioned that "[a]n
individual's presence in an area of expected criminal activity,
standing alone, is not enough to support a reasonable,
particularized suspicion that the person is committing a crime."
Id. at 124.  Nonetheless, the Supreme Court held that under the
circumstances, the seizure was constitutional.  It explained
that the defendant's "unprovoked flight upon noticing the
police" in a high-crime area justified reasonable suspicion and
his subsequent arrest.  Id. at 124-25.

The Court in <u>Wardlow</u> did not announce a per se rule that unprovoked flight upon noticing a police officer always constitutes reasonable, particularized suspicion.  <u>Id.</u> at 126-27 (Stevens, J., concurring in part and dissenting in part).  Our Court of Appeals explained that <u>Wardlow</u> "does not suggest that someone's unprovoked flight will necessarily justify a <u>Terry</u> stop merely because that person happens to reside in a high crime area."  <u>United States v. Navedo</u>, 694 F.3d 463, 472 (3d Cir. 2012).  In that case, officers were investigating a shooting that had occurred two months earlier in an area that was "not a high crime area," when they observed the defendant peering into a bag held by another person.  <u>Id.</u> at 465-66 (internal quotations omitted).  In due course, that person pulled a gun out of the bag, but the defendant never touched it. <u>Id.</u>  At that point, the officers approached the two, and the defendant fled.  <u>Id.</u> at 466.  The officers pursued the defendant to his nearby apartment where they found multiple firearms, which the defendant moved to suppress.  <u>Id.</u>

The Court of Appeals held that the officers had no reason to suspect that Navedo was involved in criminal activity based on his flight.  <u>Id.</u> at 474.  Referencing Justice Stevens' concurrence in <u>Wardlow</u>, the Court also noted that individuals residing in high-crime areas may be "particularly apprehensive

of police for reasons totally unrelated to their own involvement in a crime." Id. at 472.

The court finds under the totality of the circumstances as recited above that the police did not have reasonable, particularized suspicion to seize Teixera. The situation here contrasts markedly from Wardlow, where the police had information that a large number of drug customers and lookouts would be congregating in a specific high crime area. On approaching that area, the police observed a person with an opaque bag who, without any interaction with the police, immediately fled. Officers Lee and Gershwin, it is true, were in a high crime area, and Teixera fled. However, they neither observed nor had information from which they could reasonably suspect that criminal activity was afoot in a particular area of North Broad Street either before or after Teixera took off. Teixera fled only after he exercised his right not to answer the police's questions and after he was told for no reason to put up his hands.

Navedo is a reminder that flight in a high crime area by itself does not equate with reasonable, particularized suspicion. Here there is nothing more. See also Maryland v. Buie, 494 U.S. 325, 334 n.2 (1990); United States v. Bonner, 363 F.3d 213, 217 (3d Cir. 2004). The fact that Teixera was in a

high crime area and fled does not tip the scales against
Teixera.

       Officers Lee and Gershwin may have had their
suspicions when Teixera fled, but it was not the reasonable,
particularized suspicion required by the Fourth and Fourteenth
Amendments of the Constitution.  The Government has not met its
burden of proof by a preponderance of the evidence based on the
totality of the credible evidence in the record.

       Accordingly, the motion of Renato Teixera to suppress
the firearm seized from his person will be granted.